IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD OWENS, )
)
      Plaintiff, )
)
  v. ) Civil No. 12-15
)
ALLEGHENY VALLEY SCHOOL and )
NORTHWESTERN HUMAN SERVICES, )
)
      Defendants. )

MEMORANDUM OPINION

Mitchell, J.

    Presently before the Court is defendants', Allegheny Valley School ("AVS") and Northwestern Human Services ("NHS") (or, collectively, "defendants") motion to dismiss (Doc. # 3) the complaint filed by Plaintiff, Richard Owens ("Owens") (Doc. # 1, Ex. 2). For the reasons that follow, the motion is granted in part and denied in part.

    I.  Factual and Procedural History

    Owens was employed by AVS from April 2004 through August 2010 as the only African-American Motor Vehicle Operator/Program Aide. NHS is the parent company of AVS.

    In 2008, Owens filed charges of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"), arising primarily from the actions of his immediate supervisor

1

at AVS, Bruce Gutt. The charges were resolved in the summer of 2009. Owens continued working at AVS and Gutt continued to supervise him.

In the fall of 2009, Owens's working condition again began to deteriorate, once more traceable to Gutt's allegedly racially-discriminating conduct. Owens avers that Gutt treated him unfavorably as compared to the white drivers and undertook a campaign to have Owens fired. Owens complained that Gutt yelled at him, yet communicated courteously with white drivers, compelled him to perform demeaning jobs while exempting white drivers from similar tasks, called him "Buckwheat", required him to work while white drivers relaxed, and made him stay late after his shift ended whereas white drivers were permitted to go home. Owens also asserts that, on some occasions, Gutt prohibited him from driving additional trips and instead ordered him to wash buses or be penalized with loss of vacation time.

Owens additionally claims that Gutt attempted to frame him for employee theft. AVS drivers are assigned an individual pin number to purchase gas so that the company can track business-related gas purchases. In October 2009, Owens learned that an AVS subcontractor used his pin number to purchase gas. The subcontractor submitted the gas receipt to Gutt who signed Owens's name to the receipt. Owens asserts that Gutt wanted it to appear that he for using a company gas card to make personal

2

gas purchases, thereby providing justification for his termination.

Owens's final claim is that Gutt discussed the details of his personal health information with other AVS employees, made disparaging remarks about his use of sick time, and told other employees that Owens was "screwing the company" by taking time off. Compl. ¶ 12(h).

In November 2009, Owens reported Gutt's activity surrounding the pin number incident to Ronnie Erath ("Erath"), Gutt's supervisor, and Richard Rizzutto ("Rizzutto"), AVS's Human Resources Director, but, other than Erath's response that she authorized the gas charged with Owens's pin number, his complaints were largely ignored. Owens further states that Erath failed to respond to his emails of July 12 and 14 of 2010, wherein he described Gutt's disparaging remarks to other employees concerning reasons why Owens took a medical leave.

Although the record is not clear, it appears that sometime in June 2010, Owens took leave under the Family Medical Leave Act ("FMLA"). Owens's general health and well-being improved while he was on FMLA leave; however, as he was approaching the date scheduled to return to work, he experienced renewed feelings of anxiety and stress about the discrimination and retaliation he experienced in his workplace. Consequently, on August 19, 2010, while still on leave, Owens emailed Rizzutto

that he was forced to resign his position because the disparate treatment by Gutt created a hostile work environment and because AVS failed to respond to his complaints. Shortly after he tendered his resignation, Owens contacted AVS's parent company, NHS about the issues with Gutt. NHS launched an investigation that resulted in Gutt's termination.

On October 16, 2012, Owens timely filed charges of racial discrimination with EEOC and the Pennsylvania Human Rights Commission ("PHRC") and he received right-to-sue letters from these bodies. Owens then filed a complaint in the Court of Common Pleas of Allegheny County and defendants removed the case to this Court pursuant to federal question jurisdiction.

Defendants have filed a motion to dismiss the complaint contending that Owens failed to exhaust his administrative remedies as to NHS and that Owens did not suffer any racially discriminating treatment for the months prior to his resignation.

II. Standard of Review

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to

4

survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

### III. Discussion

#### A. Exhaustion

A plaintiff must exhaust all administrative remedies prior to bringing a Title VII claim. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). The Court of Appeals for the Third Circuit has recognized that the exhaustion requirement serves two important functions: it puts the employer on notice that a complaint has been lodged against him and provides an opportunity to take remedial action, and, it provides notice of the alleged violation to the EEOC affording the agency the

opportunity to fulfill its statutory obligation to attempt to resolve the dispute. Bihler v. Singer Company, 710 F.2d 96, 99 (3d Cir. 1983). If a plaintiff brings suit based upon allegations that were not included in the EEOC charge, a district court may assume jurisdiction over those claims only "if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed those claims." Howze v. Jones & Laughlin Steel Corporation, 750 F.2d 1208, 1212 (3d Cir. 1984). "The relevant test in determining whether [plaintiff] was required to exhaust [his] administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).

Owens's uncounseled charge submitted to the EEOC on October 16, 2010 does not name NHS as a party, nor is NHS referred to in the body of the charge. The role of NHS was first disclosed on May 9, 2011, when Owens's counsel submitted a letter to the EEOC responding to the employer's defense to the discrimination charge. This submission revealed that, subsequent to his resignation, Owens contacted NHS, AVS's parent

6

company, about his issues with Gutt. According to the letter, after NHS's investigation, Gutt was terminated.

The defendants claim that Owens's failure to name NHS in the EEOC charge precludes him from proceeding against that entity in this matter. They further contend that, even if exhaustion is excused, the complaint should be dismissed as to NHS because Owens has not alleged any facts supporting a finding that NHS was his employer or that NHS engaged in any discriminatory or retaliatory manner.

Owens avers that it was not necessary to file a separate EEOC charge against NHS because the charge as filed encompassed both the parent and the subsidiary. Citing DeLa Cruz v. Piccari Press, 521 F.Supp. 2d 424, 433-34 (E.D. Pa. 2007), Owens posits that the pivotal question is whether there is a close nexus between the EEOC charge and the allegations in the complaint. Owens proposes that his 2010 EEOC charge, supplemented by counsel's May 9, 2011 letter, sufficiently called the agency's attention to actions of both AVS and NHS and that the subsequently filed complaint did not include any additional accusations against the entities. He thus asserts that he has exhausted his administrative remedies as to both the parent and the subsidiary.

Owens further argues that the close parent/subsidiary relationship between NHS and AVS compels a conclusion that NHS is liable for the actions of AVS. Owens avers that his situation is akin to that in Ratcliffe v. Insurance Company of North America, 482 F. Supp. 759, 764 (E.D. Pa. 1980) wherein the district court held that a parent can be liable for its subsidiary's discrimination where the parent supplied staff functions and personnel services to the subsidiary. He submits that NHS's employee, Joanne Edwards's, investigation and eventual termination of Gutt demonstrates the requisite connection between the parent and subsidiary sufficient to hold NHS liable for AVS's discriminatory behavior. He additionally asserts that NHS had notice of the alleged discriminatory and retaliatory conduct when, prior to filing the 2010 EEOC charge, Owens telephoned Ms. Edwards concerning his issues with Gutt.

Defendants respond to Owens's arguments for NHS's inclusion in this litigation with two counter-arguments. First, the complaint's solitary allegation regarding NHS, i.e., "NHS was directly responsible for the actions of its subsidiary company," Compl. ¶ 3, is wholly conclusory and without factual support sufficient to sustain Owens's burden to demonstrate that the operations of the two entities were entangled. Second, NHS re-states its position that, even if it could be construed as

Owens's employer, Owens did not exhaust his administrative remedies as to NHS.

"A Title VII action ordinarily may be brought only against a party previously named in an EEOC action." Schafer v. Board of Public Education Of the School District Of Pittsburgh, Pa., 903 F.2d 243, 251-52 (3d Cir. 1990) (citing 42 U.S.C. § 2000e-5(f)(1)). However, the "Third Circuit has recognized an exception to this general rule where (1) the unnamed party received notice of the EEOC complaint and (2) there is a shared commonality of interest with the named and unnamed parties." Christaldi-Smith v. JDJ, Inc. and U.C.C. Total Home, Inc., 367 F. Supp. 2d 756, 763-64 (citing Schafer, 903 F.2d at 252). The appeals court has interpreted "received notice" to mean that the unnamed party had actual notice knowledge of the EEOC complaint. Christaldi-Smith, Id. at 764 (citing Goodman v. Lukens Steel Company, 777 F.2d 113 127-28 (3d Cir. 1985)); See also Waters v. ShopRite Supermarkets, Inc., Civ. No. 2:10 cv-02986, 2011 WL 6029248, at *2 (D.N.J. December 5, 2011) (Third Circuit construes "received notice" to require that unnamed party had actual notice of the EEOC complaint). Thus, NHS will be deemed to have received notice only if it knew that a charge had been filed with the EEOC.

9

Owens had alleged no such knowledge of actual notice. Instead, Owens claims that his counsel's supplementary letter to the EEOC named NHS and its role in the action. However, nothing in the record suggests that NHS received a copy of this letter. Accordingly, it cannot be concluded that NHS had actual knowledge of the EEOC complaint; therefore, the exception to the rule that the Title VII claim can proceed against an unnamed party cannot apply.

Even if the Court were to conclude that NHS had notice of the charge, Owens has failed to show the commonality of interest requirement for the exception to apply. The Third Circuit has identified four factors, commonly referred to as the Glus factors, for courts to consider in deciding whether a plaintiff may sue a party unnamed in an EEOC action:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar [to] the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Jackson v. J. Lewis Crozer Library, Civil Action No. 07-0481, 2007 WL 2407102, at *5 (E.D. Pa. 2007 August 22, 2007)(citing Glus v. G.C. Murphy Company, 629 F.2d 248, 251 (3d Cir. 1980)).

None of the Glus factors weigh in Owens's favor. First, the role of NHS was easily ascertainable. Owens was aware of the relationship between AVS and NHS since he discussed the issues with Gutt with an NHS employee prior filing the EEOC charge. As to the remaining considerations, i.e., the similarity of AVS's and NHS's interests in the EEOC proceedings, actual prejudice to NHS, and NHS's representations to Owens concerning contact with AVS, the complaint is devoid of facts that would allow the Court to conduct a meaningful review of whether the commonality of interest requirement has been met.

For these reasons, the defendants' motion to dismiss the claim against NHS will be granted.[1]

B. Constructive Discharge

Defendants also allege that the matter should be dismissed because Owens as not set forth sufficient factual allegations to support a finding that he was constructively discharged.

---

[1] It is also noted that, upon receipt of notice from Owens, NKS promptly conducted its own investigation and terminated Gutt.

A constructive discharge claim requires the establishment of a hostile work environment followed by proof that the conditions created by the hostile work environment were so intolerable a reasonable person subject to them would resign. Goss v. Exxon Office Systems, 747 F.2d 885, 887–888 (3d Cir.1984); Spencer v. Wal-Mart Stores, Inc., 469 3d Cir. 311, 316, n.4 (3d Cir. 2006)(to prove constructive discharge, plaintiff must show a greater severity or pervasiveness of harassment than minimum required to prove hostile work environment).

To prove his threshold *prima facie* case of a hostile work environment, Owens must establish five elements: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) it detrimentally affected him; (4) it would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability. Huston v. Procter & Gamble Paper Products Corporation, 568 F.3d 100, 104 (3d Cir. 2009). In determining whether a work environment is sufficiently hostile, courts consider the totality of the circumstances, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an

employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Conduct that is "merely offensive," or which has the effect of making the employee's life at work merely unpleasant or uncomfortable is, without more, not actionable. Id. at 21. Indeed, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Mercy Philadelphia Hospital v. Mayo, Civil Action No. 10-5261, 2011 WL 1045101, at *2 (E.D.Pa. March 22,2011) (quotation omitted).

AVS first urges that Owens cannot establish that he was subjected to a hostile work environment and/or that he was constructively discharged because he has not alleged that the alleged racial discrimination was pervasive or that it interfered with his work performance. Although AVS admits that Owens may have been subjected to an offhand comment, it contends that because Owens was never disciplined, urged to retire, demoted, nor given a negative job evaluation, he was not subject to discriminatory behavior rising to the level of a hostile work environment. As to Owens's grievances concerning the alleged misuse of his pin number to purchase gas and his assignment to demeaning tasks from which white workers were excused, AVS responds that Owens did not suffer any adverse employment action

13

in connection with the pin number incident and that the work tasks complained of were within Owens's job description. AVS further asserts that because Owens admits that he was on FMLA leave at the time of his resignation, he had not been subject to any alleged discriminatory treatment for months. Finally, AVS claims that Owens never informed AVS that he was subject to discrimination or retaliation until after he was out on FMLA leave, months after he was subjected to alleged discriminatory treatment.

AVS's litany of what Owens did not experience in the workplace, is not responsive to Owens's claim that he encountered persistent discrimination. According to the complaint, in the fall of 2009, after resolution of Owens's initial EEOC charge, Gutt assigned demeaning tasks to Owens on a regular basis that white workers were not required to perform. He also was foreclosed from driving additional trips afforded to white drivers and forced to work overtime when white drivers were allowed to leave at the end of their shifts. In October 2009, Gutt authorized another driver to use Owen's pin number to purchase gas which Owens interpreted as a campaign by Gutt to get him fired.[2] In February 2010, Gutt referred to Owens as

---

[2] Owens cites Suders v. Easton, 325 F.3d 432, 445 (3d Cir. 2003), vacated on other grounds, Pennsylvania

State Police v. Suders, 124 S. Ct. 2342 (2004), for the proposition that constructive discharge may arise from a single incident of discriminatory conduct.

In Suders, the plaintiff claimed that she was exposed to a sexually hostile work environment, defined by repeated acts of intimidation, improper touching, and sexually offensive conversation. Reviewing this evidence on appeal from a motion for summary judgment, the Third Circuit determined that the plaintiff had raised genuine issues of material fact relating to her constructive discharge claim.

The appeals court further observed that any doubt as to whether Suders could proceed with her constructive discharge action was removed when, on her last day of work, her co-workers attempted to set her up on a false charge of theft. After being advised that she had failed a required exam, Suders discovered her test scores hidden in a set of drawers and removed them from the drawers. When the officers realized that Suders's test results were missing, they dusted the drawers with an invisible powder that turns the hand of a suspected thief blue. When Suders returned the papers to the drawer, her hands turned blue. The barracks' officers then apprehended Suders and treated her as an accused suspect, i.e., she was handcuffed, photographed, and questioned. She felt "abused, threatened and held against her will." Id. at 439 (quotations and citations omitted). After she was accused and questioned, Suders tendered her resignation. She, however, was not permitted to leave the barracks because she was a suspect. At that point, the officers took Suders into an interrogation room, and advised of her *Miranda* rights. After further questioning, Suders demanded to be released. When she reiterated her intent to resign, Suders was allowed to leave the building.

The facts supporting Suder's claim that she was set up as a thief are far more compelling than Owens's assertion that Gutt choreographed the pin number incident to culminate in Owens's termination. Thus, this singular incident does not warrant a conclusion that Owens was constructively discharged.

15

"Buckwheat," understood by plaintiff as a derogatory term for African-Americans. Later, in July 2012, Gutt told other employees about Owens's illness and offered that Owens was cheating the company by taking time off.

These allegations of mistreatment motivated by racial animus, at this stage of the lawsuit, are sufficient to demonstrate that Owens has a plausible hostile work environment claim. Considering the frequency of the discriminatory conduct (ongoing), its severity (the "Buckwheat remark and the questionable pin number incident), its humiliating nature (forced to perform demeaning tasks), and its interference with his work performance (renewed feelings of anxiety and stress when his FMLA leave was expiring), the totality of the circumstances demonstrate that Owens's hostile work environment claim is actionable.

Additionally, the cases defendants cite to support its position that Owens has not set forth a viable claim, and, thus, cannot demonstrate that he was constructively discharged, are distinguishable. For example, in Wellman v. DuPont Dow Elastomers, LLC, 414 Fed. App'x 386 (3d Cir. 2011), the Third Circuit determined that a female employee was not subjected to a

hostile work environment where she was subjected to sporadic incidences over a six month period which did not establish a pattern of conduct or relate to her gender. In contrast, Owens has alleged both that the discriminatory behavior was ongoing and that his poor treatment was related to his race. In <u>Whitesell v. Dobson Communication</u>, 353 Fed. App'x 715 (3d Cir. 2009), the appeals court concluded that a few age-related remarks were not severe and pervasive because the comments were neither physically threatening nor humiliating, and the plaintiff did not show that the comments affected her work performance. While Owens has not alleged that he was subject to widespread racially charged comments, he does claim that, in addition to the "Buckwheat" remark, he was compelled to continually perform demeaning tasks from which white colleagues were exempt. Owens also avers that the thought of returning to work at AVS caused him stress and anxiety. <u>See</u> <u>also</u> <u>Holmes v. Gates</u>, No. 1:08-CV-2152, 2010 WL 956412, at *4 (M.D. Pa. March 11, 2010) (plaintiff failed to plead specific events indicative of racial animus); and, <u>Molisee v. Securitas Security Services, USA, Inc.</u> , Civil Action No. 11-1056, 2012 WL 13698, (W.D. Pa. January 4, 2012)(conduct was "merely offensive" and not tied to racial discrimination).

17

The court further finds that Owens provided adequate notice to his employer about his ongoing problems of racial discrimination occasioned by Gutt's treatment towards him. In November 2009, Owens complained to Erath and Rizzutto by email and telephone about the pin number incident. Owens also claims that he informed AVS personnel, in person, by telephone, and by email about his continuing difficulties with Gutt, including emails sent in July 2010 concerning Gutt's disparaging remarks about the reasons for Owens's FMLA leave. Although there is a possibility that some of this correspondence was mailed to an incorrect address, these facts, taken as true, demonstrate that AVS was on notice that Owens was having trouble with Gutt.

Finally, AVS's position that Owens's claim is deficient because he did not experience racially discriminatory treatment while he was on FMLA leave is rejected for obvious reasons. Owens's temporary absence from the workplace cannot be used to AVS's advantage.

Having concluded that Owen's hostile work environment claim passes Twombley/Iqbal muster, it remains to be determined if his claim of constructive discharge can survive the motion to dismiss.

To establish a constructive discharge claim, Owens must establish that AVS knowingly allowed conditions of racial

discrimination in the workplace "so intolerable that a reasonable employee would be forced to resign." Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1230 (3d Cir. 1988) (citation omitted). Owens's subjective perceptions of unfairness or harshness, however, do not govern a claim of constructive discharge, see Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992); rather, the focus is on the reasonable person. Clowes v. Allegheny Valley Hospital, 991 F.2d 1159, 1162 (3d Cir. 1993). Courts employ an "objective test to determine whether an employee can recover on a claim of constructive discharge." Duffy v. Paper Magic, Inc., 265 F.3d 163, 167 (3d Cir. 2001).

In Clowes, the Third Circuit identified certain factors as indicative of constructive discharge: (1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and, (6) unsatisfactory job evaluations. Clowes, 991 F.2d at 1161. In subsequent cases, the Third Circuit has advised that Clowes's description of situations that can indicate accompany constructive discharge was not intended to be exhaustive and the absence of Clowes factors "is not

necessarily dispositive." Suders, 325 F.3d at 445 (quoting Duffy, 265 F.3d at 168).

Although Owens's allegations of discriminatory treatment do not lend themselves to a customary Clowes analysis, his claims that he was denied opportunities for extra work afforded to white drivers and that he was forced to perform demeaning tasks can conceivably be construed as a reduction in pay or benefits and an alteration of job responsibilities, respectively. In any event, as discussed, Owens has provided sufficient evidence, at this motion to dismiss juncture, to support his claim that a reasonable employee, who faced the type of pervasive racial discrimination experienced by Owens following the filing of his initial EEOC charge, would feel compelled to resign. See Aman v. Cort Furniture Rental Corporation, 85 F.3d 1074, 1084 (3d Cir. 1996) (fact that plaintiff was subject to continuous discrimination supports conclusion that she simply had had enough; no other precipitating facts were legally required to establish constructive discharge).

Accordingly, defendants' motion to dismiss Owens's constructive discharge claim is denied.

An appropriate order will be entered.